**STATE, ex rel. HORINE FARMS, INC., Relator,**

v.

**The Honorable Samuel JONES and Cindy Faucett, Clerk of the Circuit Court of Lawrence County, Missouri, Respondents.**

No. 17921.

Missouri Court of Appeals, Southern District, Division Two.

May 20, 1992.

Lisa A. Ghan and Craig F. Lowther, Lowther, Johnson, Joyner, Lowther, Cully & Housley, Springfield, for relator.

David P. Vandagriff, Monett, for respondents.

FLANIGAN, Chief Judge.

This is a prohibition proceeding, Rule 97,[1] which stems from an interpleader proceeding, Rule 52.07, pending in the Circuit Court of Lawrence County. In dispute is the sum of $81,364.76, representing the surplus, after deduction of expenses, held by a trustee who conducted a foreclosure sale pursuant to a deed of trust executed in 1974, on certain real estate ("the land") in Lawrence County. That sale was held on June 25, 1991. No issue is presented concerning the validity of that sale or the trustee's right to bring the interpleader proceeding.

One of the claimants to the fund is Horine Farms, Inc., a Missouri corporation, ("Horine"), relator in this prohibition proceeding and a defendant in the interpleader proceeding. The other claimants are Everett Robert Buss and Patricia Buss, husband and wife, who are also defendants in the interpleader proceeding.

Following the trustee's payment of the surplus into the registry of the court, the Busses filed a motion for summary judgment and the trial court entered an order indicating his intention to grant that motion and to overrule a counter-motion filed by Horine. The proposed order would require the circuit clerk to pay the surplus on deposit to the Busses.

Horine then filed this proceeding in this court, and a preliminary order in prohibition was issued. Respondents in this proceeding are the trial judge in the interpleader proceeding and the circuit clerk. The respondents are represented here by the attorney who represents the Busses in the underlying proceeding.

In a separate and earlier proceeding, "the first case," Buss brought an action against Horine and other defendants. Patricia Buss was designated as a plaintiff in the first amended petition. She remained a party only with respect to the counterclaim which Horine filed against her and her co-plaintiff husband. The trial of the first case resulted in a judgment on the petition in favor of plaintiff Buss against Horine in the amount of $465,846.28. That judgment also found in favor of Horine and against both Busses on the counterclaim and awarded Horine $323,158.

The judgment in the first case was rendered on August 17, 1990. In January 1991, on application of Buss as judgment creditor of Horine, the circuit clerk issued a writ of execution. On February 13, 1991, the Sheriff of Lawrence County conducted an execution sale and the land was sold, under circumstances to be stated later, to Everett R. Buss and Patricia Buss, husband and wife, for the sum of $90,000. The execution sale preceded by several months the sale conducted by the substitute trustee in the 1974 deed of trust which resulted in the surplus. Horine's interest in the land, against which the execution proceeding was directed, was, of course, subject to the lien of the 1974 deed of trust.

In the first case, both sides appealed to this court. On November 25, 1991, this court reversed both of the monetary awards and the case was remanded. *Buss v. Horine,* 819 S.W.2d 762 (Mo.App.1991).

Horine contends that the trial court will exceed its jurisdiction in sustaining the motion for summary judgment, filed by the Busses, because it has authority only to distribute the surplus to Horine because: (a) Horine, as the unpaid seller of the land under a contract with the Busses, retained legal title to the land, (b) the Busses were not innocent good faith purchasers of the land, and (c) if the surplus funds are transferred to the Busses they will benefit from an erroneous judgment to the detriment of Horine.

Respondents contend that the trial court will not err in granting the Busses' motion for summary judgment because: (a) the purchaser at an execution sale of real estate takes good title even if the judgment

---

1. All references to rules are to Missouri Rules of Court, V.A.M.R.

giving rise to the execution sale is later reversed, and (b) property jointly owned by husband and wife is not subject to claims of creditors of either individual spouse. Respondents further contend that even if the trial court would err in granting the Busses' motion for summary judgment, prohibition does not lie because the error is not jurisdictional, and Horine's only permissible remedy is an appeal.

For the reasons which follow, this court holds that the Busses were not bona fide purchasers for value of the land, that Horine is entitled to the surplus and any interest which may have accrued to it, that the Busses' motion for summary judgment has no merit and the trial court would err in sustaining it, and that under the exceptional circumstances and in the interest of judicial economy this court will grant relief in this prohibition proceeding.

"The general rule is that, upon reversal of a judgment against him, the appellant is entitled to restitution from the respondent of all benefits acquired under the erroneous judgment during the pendency of an appeal." *De Mayo v. Lyons*, 360 Mo. 512, 228 S.W.2d 691, 692–693 (1950). To similar effect see *State ex rel. State Highway Com'n v. Morganstein*, 588 S.W.2d 472, 477 (Mo.banc 1979); *State v. Sevier*, 73 S.W.2d 361, 365–366 (Mo.banc 1934); *Aetna Ins. Co. v. Hyde*, 34 S.W.2d 85, 88–89 (Mo.banc 1930); *Turner v. Edmonston*, 210 Mo. 411, 109 S.W. 33 (1908); Restatement of Restitution § 74.

In *Turner v. Edmonston, supra,* 109 S.W. at 35, the court said:

In *Gott v. Powell*, 41 Mo. 416, it is said: "The restitution to which the party is entitled upon the reversal of an erroneous judgment is everything which is still in the possession of his adversary. Where a man recovers land in a real action, and takes possession or acquires title to land or goods by sale under execution, and the judgment is afterwards reversed, *so far as he is concerned, his title is at an end,* and the land or goods must be restored in specie—not the value of them, but the things themselves.

. . . . .

In *Hannibal & St. Joe R.R. Co. v. Brown*, 43 Mo. 294, the court said: "When the judgment in the case of *Brown v. Hannibal & St. Joe R.R. Co.*, 37 Mo. 298, was reversed in this court, all of the proceedings had in pursuance of that judgment were vacated, *and the defendant was entitled to be restored to the condition in which it stood previous to the judgment, and to restitution of every thing that it had lost and which remained in the hands of the adverse party, his agents, attorneys, or privies."* (Emphasis added.)

In *Vogler v. Montgomery*, 54 Mo. 577 (1874), the court said, at 582:

There is no question that a reversal of a judgment does not invalidate sales under executions to *strangers* who purchase at the sale, but as to *parties* to the judgment the law seems to be settled otherwise; and if they become purchasers they take a title subject to the ultimate disposition of the case. (Emphasis added.)

"[I]f a judgment creditor or other party of record is himself the purchaser at an execution sale, the judgment later reversed affords him no protection with respect to the title acquired." 30 Am.Jur.2d Executions § 438; 33 C.J.S. Executions § 301a(2); Restatement of Restitution § 74 cmt. e, illus. 13.

Under the foregoing authorities, if Buss, the judgment creditor, had been the sole purchaser at the execution sale, Horine would be entitled to the surplus, the land having been sold in the valid foreclosure sale of June 25, 1991.

■ An execution sale based on a void judgment vests no title in the purchaser. *Graves v. Smith*, 278 Mo. 592, 213 S.W. 128, 131[3] (banc 1919). That principle does not apply here because the judgment in the first case was merely erroneous and voidable, but not void.

■ The reversal of a judgment merely erroneous and voidable, but not void, after an execution sale thereunder, has no effect upon the title of the execution purchaser if he is a *stranger* to the proceedings.

*McGoon v. Scales,* 9 Wall. (76 U.S.) 23, 19 L.Ed. 545 (1869); *Carr v. Carr,* 253 S.W.2d 191, 195 (Mo.1952); *Sidwell v. Kaster,* 289 Mo. 174, 232 S.W. 1005, 1010[7, 8] (1921); *Turner v. Edmonston,* 210 Mo. 411, 109 S.W. 33, 35–36 (1908); *Castleman v. Relfe, Guardian of Perry,* 50 Mo. 583, 588 (1872); Restatement of Restitution § 74 cmt. i, illus. 22; 30 Am.Jur.2d Executions § 437; Anno. 29 A.L.R. 1071 (Effect of reversal of judgment on execution sale); 33 C.J.S. Executions § 301a(1); 2 Freeman on Judgments § 1174 (5th ed. 1925). The Busses seek to avail themselves of the foregoing principle.

The reason for the rule is stated in *Macklin v. Allenberg,* 100 Mo. 337, 13 S.W. 350, 352 (1890), where the court said:

> Judicial sales, made under judgments and decrees afterwards reversed, to strangers, are upheld, it is often said, to encourage bidders, and on grounds of public policy; but the true reason is that such purchasers, as well as purchasers from parties to the suit, have a right to rely upon the validity of the judgment or decree, execution not having been stayed.

Restatement of Restitution § 74 cmt. i, p. 312, reads:

> A person, *other than the judgment creditor* or his attorney, who purchases at a valid execution sale upon a judgment which is not void but which is subsequently reversed is entitled to retain the subject matter if, before reversal, he has obtained the legal title and *has paid value therefor.* (Emphasis added.)

Under that comment, Illustration 22 reads: "A obtains a valid judgment against B. Execution is levied and C purchases B's land at the execution sale for $3000 *which he pays to the sheriff,* receiving a deed thereto and going into possession. The judgment is reversed. B is not entitled to restitution of the land from C." (Emphasis added.)

■ Respondents contend that because the purchasers at the execution sale were the Busses, as husband and wife, they should be regarded as strangers to the first case. Both Busses were parties in the first case and Buss was, until his judgment was reversed, a judgment creditor. To say the least, it is difficult to regard them, as husband and wife, as strangers to the first case. That matter need not be explored for the reason that they, as husband and wife, do not qualify as bona fide purchasers for value.

"[A]n execution purchaser is not entitled to protection as a bona fide purchaser for value where he has not paid the purchase money or a valuable consideration for the property." 30 Am.Jur.2d Executions § 358. A bona fide purchaser is "one who pays valuable consideration, has no notice of the outstanding rights of others and who acts in good faith." *Landshire Food Service, Inc. v. Coghill,* 709 S.W.2d 509, 513 (Mo.App.1986); *J.C. Equipment Inc. v. Sky Aviation, Inc.,* 498 S.W.2d 73, 76 (Mo. App.1973).

Although the Busses received the sheriff's deed at the execution sale, they paid no money for that deed. Their $90,000 bid for the land was merely "applied toward judgment of unpaid balance of $142,-688.28," which was the judgment—actually the difference between the two monetary awards—which Buss obtained in the first case and which was reversed. Neither Patricia Buss nor the Busses as husband and wife parted with any money or anything of value in exchange for the sheriff's deed. Neither she nor the couple will qualify as a purchaser for value.

Buss merely applied a credit on a judgment. The credit became meaningless when that judgment was reversed. Even with respect to an un-reversed judgment, the general rule is that a judgment creditor is not entitled to protection as a bona fide purchaser. 77 Am.Jur.2d Vendor and Purchaser § 705. As pointed out in that text, cases denying such protection to the judgment creditor do so on the ground that the application of the judgment to the payment of the purchase price is merely the discharge of a pre-existing indebtedness which does not constitute value sufficient for protection to a person as a bona fide purchaser.

The proceeding, after the reversal of the judgment, to make restitution, whether by separate suit or motion in the case, is governed by broad equitable considerations. It is a question ex aequo et bono, as in suits for money or property had and received. *Teasdale v. Stoller*, 133 Mo. [645] loc. cit. 652, 34 S.W. 873, 54 Am.St.Rep. 703.

*Hurst Automatic Switch & Signal Co. v. Trust Co.*, 291 Mo. 54, 236 S.W. 58, 62 (1921).

It is clear under broad equitable principles that Horine is entitled to the surplus and that the Busses' motion for summary judgment has no merit. To hold otherwise would give the Busses unjust enrichment.

The trial court has not yet entered its order on the motion for summary judgment. The proposed order, if entered, would be reversed on appeal although, during its pendency, the security of the fund could be protected by a bond satisfying Rule 81.09(b). That rule may be invoked where the proceeds of property are in the custody or control of the court. It would be a waste of judicial resources to dismiss this proceeding merely because there could be an appeal from the judgment when it is entered.

The preliminary order in prohibition is made permanent and the cause is remanded with directions to the trial court to enter a judgment in the interpleader proceeding requiring the payment of the surplus on deposit, together with any accrued interest thereon, to Horine. It is so ordered.

MAUS and MONTGOMERY, JJ., concur.